**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenneth CARPENTER,**
**Defendant–Appellant.**

**No. 89–30290.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1990.

Decided Aug. 23, 1990.

**1132**

Dennis W. Ashman, Tacoma, Wash., for defendant-appellant.

Kurt P. Hermanns, Asst. U.S. Atty., Tacoma, Wash., for plaintiff-appellee.

Before WRIGHT and WALLACE, Circuit Judges, and PRICE,* District Judge.

* Honorable Edward Dean Price, United States District Judge, Eastern District of California, sitting by designation.

WALLACE, Circuit Judge:

Carpenter appeals his sentence following his guilty plea to three counts of a seven count indictment which arose out of Carpenter's plot to have his estranged wife murdered. Carpenter argues that the district court erred by departing upward from the applicable guideline range of 51–63 months and instead sentencing him to 108 months of incarceration. The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We affirm.

I

Carpenter, along with his codefendant Ganton, both of whom lived in Los Angeles, California, hired two juveniles to murder Carpenter's estranged wife, Billie, who, along with her three children, lived in Montesano, Washington. Carpenter and Ganton agreed to pay the juveniles $20,000 for the murder.

The murder plan, as conceived by Carpenter and Ganton, was for the juveniles to travel to Montesano, steal a logging truck, and then lie in wait for Billie along a road which Carpenter knew she would travel on an appointed day. The juveniles were instructed to use the truck to force Billie's car off the road and cause her death. As a contingency plan, Carpenter and Ganton told the juveniles to fire a rifle round into a butane tank adjacent to the trailer in which Billie and her three children lived, thereby exploding the tank and killing the occupants of the trailer. Carpenter and Ganton provided the juveniles with a rifle and several armor piercing shells to carry out this contingency plan.

Fortunately, the murder plot was foiled when the juveniles were caught attempting to steal a logging truck. After their arrest, the juveniles confessed to the murder plan and recorded a series of conversations with both Carpenter and Ganton. Soon

thereafter an indictment was filed charging Carpenter and Ganton with their participation in this murder plan.

Carpenter and Ganton pleaded guilty to use of a facility of interstate commerce with intent to commit murder and causing others to travel in interstate commerce with the intent that murder be committed, both in violation of 18 U.S.C. § 1952(a), as well as conspiracy in violation of 18 U.S.C. § 371. Both Carpenter and Ganton were sentenced to the maximum terms authorized by law—consecutive five year terms on each of the three counts to which they had pleaded guilty. They were not sentenced pursuant to the Sentencing Guidelines (Guidelines) because at that time our circuit had ruled that the Guidelines were unconstitutional. *See Gubiensio–Ortiz v. Kanahele*, 857 F.2d 1245 (9th Cir.1988). When the Supreme Court subsequently ruled that the Guidelines were constitutional, *see United States v. Mistretta*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), both Carpenter and Ganton requested and received resentencing pursuant to the Guidelines. At Ganton's resentencing, the district court determined his guideline range to be 51–63 months and imposed a sentence of 63 months. Just over one month later, Carpenter was resentenced. Although the district court determined that Carpenter's guideline range was 51–63 months, he departed upward and sentenced Carpenter to 108 months. Carpenter now appeals that departure decision.

## II

A court may impose a sentence outside the applicable guideline range if it " 'finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines....' " *United States v. Michel*, 876 F.2d 784, 786 (9th Cir.1989), *quoting* 18 U.S.C. § 3553(b). We review the district court's decision to depart from the specified guideline range pursuant to the five-step standard announced in *United States v. Lira–Barraza*, 897 F.2d 981, 983–86 (9th Cir.1990).

The first step of our review is to inspect whether the district court stated its reasons for departure by adequately identifying "the aggravating or mitigating circumstance" it believed was present. *Id.* at 983–84. The district court here complied with this first requirement by identifying two circumstances which it believed justified departure: the juveniles' possession of a firearm, and the risk to others created by the crime.

Step two of our analysis requires us to review for clear error whether the circumstances identified by the district court actually existed. *Id.* at 984. Carpenter does not dispute that the juveniles possessed a gun or that the murder plan involved a grave risk to persons in addition to the intended victim. The district court did not clearly err in finding that these two circumstances were present.

The third step of our analysis requires us to determine whether these two circumstances were of a kind adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. *Id.* at 984–85; 18 U.S.C. § 3553(b). This is a question of law and as such it is reviewed de novo. *Lira–Barraza*, 897 F.2d at 984–85.

Carpenter contends that the district court erred in determining that possession of a firearm was an aggravating circumstance which warranted departure. Carpenter argues that the Sentencing Commission adequately considered this factor in determining the offense levels for his offense of conviction. *See* United States Sentencing Commission, *Guidelines Manual*, § 2A2.1 (Oct.1987) (U.S.S.G.) (sentencing guideline for the offenses of Assault With Intent to Commit Murder; Conspiracy or Solicitation to Commit Murder; Attempted Murder). He points to section 2A2.1(b)(2) of the Guidelines which states: "(A) If a firearm was discharged, increase by *5* levels; (B) if a firearm or a dangerous weapon was otherwise used, increase by *4* levels; (C) if a firearm or other dangerous weapon was brandished or its use was threatened, increase by *3* levels." Carpenter contends that because the Commission expressed an

offense level increase for discharging, otherwise using, or brandishing a weapon, it must thereby have intended to exclude offense level increases where the firearm was simply possessed.

To conclude that the Commission's expression of some sentencing factors indicates that all other factors and circumstances were considered and rejected would be to ignore the Guidelines' plain statements to the contrary. *See* U.S.S.G. Ch. 1, Pt. A, intro. comment. (recognizing that the current guidelines do not and cannot account for "the vast range of human conduct potentially relevant to a sentencing decision"); U.S.S.G. § 5K2.0, p.s. (discussing the grounds for departure when a circumstance was not adequately considered by the Sentencing Commission). Moreover, if we were to adopt Carpenter's argument, we would eliminate the possibility of departure—a result manifestly precluded by the Guidelines themselves.

In this case, the task of determining whether the Sentencing Commission adequately considered the possibility of weapon possession for offenses like Carpenter's is not difficult. Not only does the guideline for Carpenter's offense of conviction not mention possession of a weapon, *see* U.S.S.G. § 2A2.1, the Guidelines chapter on departures also explicitly provides that "[i]f a weapon or dangerous instrumentality was used *or possessed* in the commission of the offense the court may increase the sentence above the authorized guideline range." U.S.S.G. § 5K2.6, p.s. (emphasis added). This latter point demonstrates that the Sentencing Commission was well aware that possession of a weapon was a circumstance that was not always reflected in the different offense levels under the Guidelines. If weapon possession were adequately reflected in the individual offense levels, there would be no reason for a separate departure provision. Therefore, we conclude that the district court correctly determined that the juveniles' possession of a weapon was a factor not adequately taken into consideration by the Sentencing Commission.

■ Proceeding to step four, we next address whether weapon possession war-

rants departure. Since the Guidelines themselves state that a district court may depart "[i]f a weapon or dangerous instrumentality was ... possessed in the commission of the offense[,]" U.S.S.G. § 5K2.6, p.s., departure is permissible as long as there are "facts that show a relationship between the weapon and the offense." *United States v. Nuno–Para,* 877 F.2d 1409, 1414 (9th Cir.1989); *see also United States v. Lopez,* 875 F.2d 1124, 1128 (5th Cir.1989). Carpenter does not dispute that the gun was to be used in the commission of the offense. Therefore, we conclude that the district court did not abuse its discretion by concluding that the juveniles' possession of the weapon was a circumstance that should result in an upward departure.

■ We must also analyze under steps three and four whether the other factor cited by the district court as warranting departure—the risk to others created by the murder plan—was a circumstance not adequately considered by the Sentencing Commission which should result in departure. The guideline offense level in this case is predicated upon the risk to a single victim. *See* U.S.S.G. § 2A2.1. It does not consider the risk of harm to multiple victims—in this case, Billie's three innocent children, others on the road, or individuals in proximity to the trailer. In addition, the Sentencing Commission explicitly recognized that the creation of risk was a circumstance not always considered in developing the various offense levels under the Guidelines. The Guidelines provide: "When not adequately taken into account by the applicable offense guideline, creation of a risk may provide a ground for imposing a sentence above the applicable guideline range." U.S.S.G. § 1B1.3, comment. (n.4). Thus, we agree with the district court that the risk to other victims created by Carpenter's murder plan was a circumstance not adequately reflected in the offense level assigned to Carpenter's offense of conviction.

In applying step four, since the Guidelines specifically allow an upward departure for the creation of additional risk, *id.,* we also conclude that the district court did not abuse its discretion when it determined

that the risk of harm to others beyond the intended victim was a factor that should result in an upward departure. *See United States v. Chiarelli*, 898 F.2d 373, 381 (3d Cir.1990) (concluding that when neither the base offense level nor specific offense characteristics vary according to the risk of harm, risk of harm is a proper basis for upward departure); *cf.* U.S.S.G. § 5K2.0 p.s. ("[B]ecause the robbery guideline does not deal with injury to more than one victim, departure would be warranted if several persons were injured.").

■ We now turn our attention to step five of our analysis: whether the departure was reasonable in direction and degree. *Lira–Barraza*, 897 F.2d at 986; 18 U.S.C. § 3742(e)(3). We review the reasonableness of the district court's departure for an abuse of discretion. *Lira–Barraza*, 897 F.2d at 986.

With respect to the juveniles' possession of a weapon, the district court observed that pursuant to section 2A2.1(b)(2), discharging a weapon warranted a five point increase, otherwise using a weapon warranted a four point increase, and brandishing a weapon warranted a three point increase. The court then reasoned that the logical extension of this ranking would allow for a two point increase for *possession* of a weapon. This carefully reasoned departure cannot be characterized as an abuse of discretion.

Similarly, in an effort to find a concrete framework for determining the appropriate degree of departure for the risk created to others by Carpenter's murder plan, the district court turned to section 3A1.1 of the Guidelines which provides for a two point increase where "the defendant knew or should have known that the victim of the offense was unusually vulnerable due to age...." The court then reasoned that if one vulnerable victim warranted a two point increase, then the risk to Billie's three children and others warranted a three point increase. In essence, the district court defined the degree of unconsidered risk by reference to the type of victim upon whom that risk fell. Such an approach was eminently reasonable and thus the district court did not abuse its discretion by imposing the three point increase.

By assigning Carpenter a two point increase for the juveniles' possession of a weapon and a three point increase for the risk of harm to Billie's children and others, the district court effectively increased Carpenter's offense level from 24 to 29. An offense level of 29 corresponds to a guideline range of 87–108 months. We conclude that the district court plainly did not abuse its discretion by increasing Carpenter's sentence to 108 months.

### III

■ However, Carpenter contends that despite the district court's carefully reasoned departure decision, his sentence must be unreasonable because Ganton, his codefendant, was sentenced to only 63 months for his participation in the same crime. To conclude otherwise, he claims, would be contrary to the Guidelines' expressed purpose of encouraging uniformity in sentencing. We recently rejected a similar challenge in *United States v. Enriquez–Munoz*, 906 F.2d 1356 (9th Cir.1990). There we stated:

> Equalization is not a factor specified in the Guidelines, nor is it one we can say was overlooked....
>
> The government's reliance on the fact that the Commission "sought uniformity in Sentencing by narrowing the wide disparity in sentences ... for similar criminal conduct" is unpersuasive.... The uniformity the Guidelines sought was designed to come from the specific provisions of the Guidelines itself, not from giving judges a broad discretion to ignore the Guidelines and increase sentences based on extraneous factors such as punishment meted out to a codefendant.

*Id.* at 1359–60 (citation omitted). We recognize that *Enriquez–Munoz* is not directly on point because there the issue was whether a district court may depart upward in sentencing one defendant in order to equalize his sentence with that of his codefendant, whereas here the issue is whether a district court may depart upward on one defendant's sentence and thereby create a disparity between codefendants' sentences. However, we conclude that the reasoning of *Enriquez–Mu-*

*noz* is equally persuasive here. If we did not extend *Enriquez–Munoz*'s reasoning to this case, our resulting circuit law would be entirely incongruous: a district court would be prohibited from increasing a codefendant's sentence "for purposes of equalization," *id.* at 1360, but would be required to decrease an otherwise reasonable sentence for purposes of equalization.

The district court's stated reasons for imposing a different sentence on Carpenter only strengthen our general rejection of the principle that all codefendants' sentences must be equalized. First, the district court acknowledged that during the month which had elapsed between the sentencing of Ganton and Carpenter he had gained an increased understanding of the Guidelines. The district judge stated that at the time he sentenced Ganton, he was not aware that an upward departure for possession of a weapon was permissible. Thus, the district judge's conclusion, if anything, was that Ganton's sentence was too short, not that Carpenter's sentence was too long. It would be folly to require district courts to persist in imposing a flawed sentence in the name of uniformity. *See United States v. Goot*, 894 F.2d 231, 238 (7th Cir.1990) (*Goot*) (rejecting a defendant's argument for a sentence equal to that of his codefendant and stating that where codefendants were sentenced approximately one month apart, "[w]e are unwilling to impose on the district court a duty of anticipating the reasons for sentencing it will state when it has a codefendant before it"). In addition to his statement that his understanding of the Guidelines was different at the time Carpenter was sentenced, the district judge also said that he thought Carpenter was more culpable than Ganton. This conclusion is hardly surprising. The intended murder victims were Carpenter's wife and children, not Ganton's. Thus, the facts of this case provide an excellent example of why it would be improper to require equalization of codefendants' sentences.

A final reason that we decline to require equalization of codefendant sentences is that to do so would create a circuit conflict. Both the Fifth and Seventh Circuits have held that a defendant "cannot base a challenge to his sentence solely on the lesser sentence given by the district court to his codefendant." *United States v. Boyd*, 885 F.2d 246, 249 (5th Cir.1989) (*Boyd*); *see also United States v. Pierce*, 893 F.2d 669, 678 (5th Cir.1990); *United States v. Guerrero*, 894 F.2d 261, 267–68 (7th Cir. 1990); *Goot*, 894 F.2d at 237–38. Instead, a defendant must show that his sentence was a result of incorrect or inadmissible information, or an incorrect application of the Sentencing Guidelines. *Boyd*, 885 F.2d at 249; *Goot*, 894 F.2d at 238. As we have discussed above, the district court's departure decision in this case resulted from a proper application of the departure provisions of the Guidelines and was reasonable. We agree with the Fifth and Seventh Circuits that in this situation, where Carpenter's challenge to his sentence is based solely on the disparity between his sentence and Ganton's, his challenge must fail.

We conclude that the district court's departure decision was reasonable, and therefore we uphold Carpenter's sentence.

AFFIRMED.