5 F.3d 544
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Gerald Martin WALSH, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jiles Byron GRAY, Defendant-Appellant.
 Nos. 92-50003, 92-50209.*
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 6, 1993.
Decided Aug. 25, 1993.
 
 Appeal from the United States District Court for the Central District of California; Nos. CR-90-0687-JGD, No. CR-90-0687-JGD, John G. Davies, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before: NOONAN, FERNANDEZ, and KLEINFELD, Circuit Judges
 MEMORANDUM**
 Gerald Walsh appeals his jury conviction and sentence under the Sentencing Guidelines for conspiracy to transport and possess stolen goods in violation of 18 U.S.C. Sec. 371, interstate transportation of stolen goods in violation of 18 U.S.C. Sec. 2314, possession of stolen goods in violation of 18 U.S.C. Sec. 2315, and conspiracy to obstruct or delay commerce by robbery in violation of 18 U.S.C. Sec. 1951. Jiles Byron Gray appeals his conviction by guilty plea and his sentence under the Sentencing Guidelines for the same crimes. Both of their convictions arise out of their involvement in a scheme to steal cargo containers of electronics equipment from storage terminals in New Jersey, have the containers shipped to a warehouse in Southern California, and then arrange for the sale of the goods.
 The jury found Walsh guilty on all four counts. At sentencing the court denied his request for a downward departure and ordered him to pay $753,896.64 in restitution. On the day of trial, Gray pleaded guilty to all four counts.
 WALSH'S APPEAL
 A. Denial of the Suppression Motion
 Walsh argues that the district court erred by refusing to grant his motion to suppress the evidence obtained as a result of Gray's warrantless arrest. Walsh does not directly challenge the district court's finding of probable cause. Rather, he contends that even if the officers had probable cause to arrest Gray, they violated the fourth amendment because Gray was arrested "in a non-public place without a warrant." United States v. Hoyos, 892 F.2d 1387, 1393 (9th Cir.1989), cert. denied, 498 U.S. 825, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990). "It is established law that a warrantless and non-consensual entry into a suspect's home to make a routine felony arrest is prohibited. However, a warrantless arrest of a suspect made in a 'public place' does not violate the fourth amendment." Id. (citation omitted); United States v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976) ("the warrantless arrest of an individual in a public place upon probable cause [does] not violate the Fourth Amendment") (citing United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)).
 Thus, the question before the district court was whether Gray was in a public place at the time the officers first approached him with probable cause to arrest. See Santana, 427 U.S. at 42, 96 S.Ct. at 2409. In Santana, the Supreme Court held that when Santana was standing in the doorway, "[s]he was not in an area where she had any expectation of privacy." Id. Accordingly, the officers were entitled to arrest her there without implicating her fourth amendment rights. Moreover, "her act of retreating into her house" did not serve to "thwart an otherwise proper arrest." Id. By chasing her inside, the police were properly within the "hot pursuit" exception. Id. at 42-43, 96 S.Ct. at 2409-10.
 Here, the district court properly found that Gray's arrest was within the "public place" exception, as set forth in Santana and Hoyos. The government presented the declaration of Deputy Seiko Tokuda of the Los Angeles County Sheriff's Department in support of its opposition to the suppression motion. Based on Tokuda's testimony, the district court found that Gray, as Santana, was standing in the warehouse's doorway in plain view as the officers approached and that he was clearly visible to them. This finding was not clearly erroneous. The district court determined that Gray was in a public place when the officers, who had probable cause to arrest him, approached. Therefore, the district court correctly found that the officers did not violate Gray's fourth amendment rights by pursuing him into the warehouse and arresting him there.
 B. Prosecutorial Misconduct
 Walsh contends that he was denied a fair trial because the prosecutor, during her opening argument, displayed a gun which had been found in the New Jersey warehouse rented by Walsh and Gray. Walsh objected to the gun's display. Walsh appears to argue that he was prejudiced because the prosecutor, through her display of the gun, implicitly asserted that Walsh used it during the New Jersey robberies, despite the fact that she had no reason to believe that she could present evidence to prove that. Nevertheless, Walsh can identify no instance in the trial where the prosecutor actually asserted that Walsh handled the gun. Moreover, as Walsh concedes, the gun was admitted into evidence without objection.
 The prosecutor did not misstate the evidence or refer to evidence which was never admitted. C.f., e.g., United States v. Taren-Palma, No. 92-10085, slip op. 6015, 6025 (9th Cir. June 10, 1992) (per curiam); United States v. Monks, 774 F.2d 945, 955 (9th Cir.1985). There was no misconduct.
 C. Sufficiency of the Evidence
 Walsh next argues that there was insufficient evidence to support his convictions. Because Walsh failed to renew his motion for judgment of acquittal at the close of his case, "he effectively waived his objection to the sufficiency of the government's evidence.... [H]owever, we may review the denial of a nonrenewed motion for acquittal, but only 'to prevent a manifest miscarriage of justice' or for plain error." United States v. Comerford, 857 F.2d 1323, 1324 (9th Cir.1988) (per curiam) (citations omitted), cert. denied, 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 802 (1989).
 Walsh challenges the sufficiency of the evidence as to all the counts on the same ground--lack of evidence to prove that Walsh knew that the electronics were stolen. See, e.g., Liparota v. United States, 471 U.S. 419, 425 n. 9, 105 S.Ct. 2084, 2088 n. 9, 85 L.Ed.2d 434 (1985). The predicate act of both conspiracy counts is robbery, and the other two counts concern the possession and transportation of stolen goods. Walsh asserts that all the evidence presented was consistent with his defense, that he believed himself to have been engaged in a legitimate business venture to sell bankruptcy close-out merchandise.
 We find that there was ample evidence to show that Walsh knew that he was trafficking in stolen goods. We have long recognized that "possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances ... that the person in possession knew the property had been stolen." Jones v. United States, 378 F.2d 340, 341 (9th Cir.1967); United States v. Smith, 833 F.2d 213, 218 (10th Cir.1987); see also Barnes v. United States, 412 U.S. 837, 843, 93 S.Ct. 2357, 2362, 37 L.Ed.2d 380 (1973) ("For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods"). Here, the stolen goods were shipped from the warehouse Walsh helped to rent within three weeks of the first robbery and within a few days of the second.
 It is true that, "where a defendant has given a 'full explanation' of the story behind his or her possession of certain property, and there is no evidence to impugn that story, a conviction cannot be had for possession of stolen property, as the essential element of knowledge has not been proved." Krause v. Bennett, 887 F.2d 362, 370 (2d Cir.1989). In this case, Walsh's version was not inherently believable. Rather, it was fanciful. Moreover, the government's version rings true--Walsh knowingly functioned as Gray's "frontman" to arrange for the transportation and sale of the stolen goods. The facts presented at trial showed that the whole "business" was conducted in a very unbusinesslike manner. The facts are indicative of guilt. Certainly, a jury, assessing the credibility of the witnesses, could find guilt. Certainly, the cumulative effect of the circumstantial evidence which showed that Walsh must have known that he was dealing in stolen goods was so persuasive that a reasonable jury could have found the mens rea element in all of the counts.
 D. The Brady Issue
 Walsh next asserts that the government violated his due process rights by failing to disclose before trial a recorded conversation between codefendant Preston and an informant named Virgil Allen. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment...." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). Evidence is material if there is a "reasonable probability" that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). That is, the failure to disclose requires reversal only if it undermines confidence in the outcome of the trial. Id.
 Walsh does not come close to showing a Brady violation. In the first place, the evidence was not favorable to him. Moreover, he failed to make a plausible showing of prejudice. There simply is no reasonable probability that the government's disclosure of the material would have led to Walsh's acquittal.
 E. Downward Departure
 At sentencing, the district court accepted the recommendations contained in the presentence report (PSR) with regard to the use of deadly weapons during the two robberies, and imposed the proper enhancements under U.S.S.G. Sec. 2B3.1(b)(2) (Nov. 1990).[1] Walsh argues that the court should have exercised its discretion to depart downward because no evidence connected him with the use of a weapon during either robbery, other than as a member of the conspiracy. Specifically, he asserts that Guidelines section 5K2.0 permits a downward departure because no other section of the Guidelines adequately takes into account the situation of a coconspirator who had no knowledge, and no reason to foresee, that another member of the conspiracy would use a weapon. That argument is meritless.
 We have found that in an analogous situation of drug trafficking "when one conspirator possesses a firearm in furtherance of the conspiracy, it may be appropriate to enhance the offense levels of the co-conspirators even if the gun is not actually used and they were not aware of its presence." United States v. Vargas, 933 F.2d 701, 710 (9th Cir.1991). Guidelines section 2D1.1(b)(1) calls for an enhancement if a drug trafficking offender possesses a firearm. Id. In addition, under section 1B1.3(a)(1), the relevant conduct guideline, the defendant's offense level determination is to include the acts for which he "would be otherwise accountable." Id. (quoting U.S.S.G. Sec. 1B1.3(a)(1)). Those acts specifically include "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." Id. (quoting U.S.S.G. Sec. 1B1.3, comment. (n. 1)). Thus, we found that the firearm enhancement is permissible if the co-conspirator's possession in furtherance of the conspiracy was "reasonably foreseeable." Id.
 Section 2B3.1(b)(2) works in basically the same way with regard to robbery as section 2D1.1(b)(1) does with drug trafficking. Thus, the Guidelines do take into account a co-conspirator's use of a deadly weapon during a robbery as an "aggravating or mitigating circumstance." U.S.S.G. Sec. 5K2.0. As the district court apparently found, a downward departure would not have been permissible under section 5K2.0. Cf. United States v. Carpenter, 914 F.2d 1131, 1133-34 (9th Cir.1990). We say "apparently" because it is not entirely clear that the district court failed to actually exercise its discretion when it declined to depart. Of course, if the district court did exercise discretion, its decision not to depart downward based on the facts Walsh presented is not reviewable. See United States v. Morales, 972 F.2d 1007, 1011 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993).
 F. Restitution
 At sentencing, the district court adopted the probation officer's recommendation and imposed restitution in the amount of $753,896.64. The obligation was made joint and several on all codefendants. In his opening brief, Walsh argued that the amount of restitution was improperly calculated because it counted some items twice--specifically, the stolen televisions. That argument fails because the televisions were all recovered and were not even used to calculate the restitution amount. Walsh also argued that "the proof varied from the allegations." However, he made no effort to identify any particular variance, and our review discloses none.
 In his reply brief, Walsh asserts for the first time that the district court failed to make adequate findings as to his ability to pay the $753,896.64. We need not consider arguments not "specifically and distinctly raised and argued in [appellant's] opening brief." Cross v. Washington, 911 F.2d 341, 345 (9th Cir.1990) (citation omitted), cert. denied, --- U.S. ----, 111 S.Ct. 1313, 113 L.Ed.2d 247 (1991); Guam v. Tedtaotao, 896 F.2d 371, 373 n. 3 (9th Cir.1990) (criminal matter). We decline to do so here. Of course, if in the future Walsh "can demonstrate that he has made a diligent, good faith effort to [pay], he may petition the district court at that time for either an extension of time period for payment or a remittitur." United States v. Smith, 944 F.2d 618, 624 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992). The district court emphasized its intention to consider just that kind of petition.
 GRAY'S APPEAL
 A. Withdrawal of Guilty Plea
 Gray argues that the district court should have permitted him to withdraw his guilty plea because a "rift" developed between Gray and his trial attorney between the time of his plea and sentencing, which resulted in his being denied effective assistance of counsel. Where, as here, the motion to withdraw the plea is made after a codefendant has been sentenced, the plea "will not be set aside unless a manifest injustice would result." Hoyos, 892 F.2d at 1400.
 
 
 1
 Gray decided to plead guilty on the first day of trial and the district court took his plea at that time. In accordance with Federal Rule of Criminal Procedure 11, the district court engaged in a detailed discussion with Gray, which established that his plea was knowing and intelligent. Gray stated that he was satisfied with his attorney's representation. Gray stated that he understood and agreed with all the allegations in the indictment. He was also advised of his constitutional rights and knowingly waived them. Moreover, before the plea was accepted, the district court made sure that Gray was advised of the maximum sentence he faced, as well as the Guidelines factors which might affect his sentence.
 
 
 2
 Our review of the record indicates that what really occurred was a change of heart once Gray fully realized what his sentence was likely to be. A defendant's "change of heart" does not entitle him to withdraw his plea. United States v. Rios-Ortiz, 830 F.2d 1067, 1069-70 (9th Cir.1987). As this court has stated, if a defendant pleads guilty "to test the weight of potential punishment," and then tries to withdraw because he finds the sentence "unexpectedly severe," a district court will not abuse its discretion by refusing to permit that withdrawal. United States v. Ramos, 923 F.2d 1346, 1359 (9th Cir.1991). The district court reasonably found that Gray's ineffective assistance of counsel claim was made too late in the proceeding to be credited. Its action resulted in no manifest injustice. Id.
 
 B. Sentencing Enhancements
 
 3
 Gray contends that the district court improperly enhanced his sentence for obstruction of justice under section 3C1.1 of the Guidelines and for a leadership role in the offense under section 3B1.1(b). The district court found that Gray obstructed justice by testifying falsely at his bail revocation hearing on August 8, 1991--two days after he pleaded guilty. Guidelines section 3C1.1 states: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. Sec. 3C1.1 (Nov. 1990). The commentary explains that providing false information to a judge is an example of the type of conduct to which the enhancement applies. Id., comment. (n. 3(f)). That is exactly what Gray did. The district court properly considered Gray's statements during the bail revocation hearing and did not commit clear error in finding that those statements obstructed justice.
 
 
 4
 Finally, Gray argues that the district court erred in applying the two-level role in the offense enhancement because it improperly relied on testimony adduced at the codefendants' trial. He couches his claim as a violation of his constitutional right to confront witnesses, since he did not take part in the trial. He also contends that the trial testimony was inherently unreliable because the codefendants were motivated to minimize their culpability at his expense.
 
 
 5
 However, not only does the due process clause not require confrontation at sentencing, United States v. Notrangelo, 909 F.2d 363, 365-66 (9th Cir.1990), but the confrontation clause itself does not apply at sentencing. United States v. Petty, 982 F.2d 1365, 1370 (9th Cir.1993), amended, 992 F.2d 887 (same). Of course, "a defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information." Id. at 1369. But as long as the trial testimony has sufficient indicia of reliability to support its probable accuracy, it may be used at sentencing. Notrangelo, 909 F.2d at 365 (citing U.S.S.G. Sec. 6A1.3(a)). Here, the district court's finding that the trial testimony was sufficiently reliable was not clearly erroneous. Testimony by the codefendant and by third parties, as well as objective evidence such as charge slips and shipping orders, showed that Gray was integrally involved in organizing and leading this criminal enterprise.
 
 
 6
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Under section 2B3.1(b)(2), the base offense level for robbery (20) is increased for various "specific offense characteristics," including the use of a deadly weapon or firearm. U.S.S.G. Sec. 2B3.1(b)(2) (Nov. 1990). Although Walsh was sentenced in December of 1991, the district court used the November, 1990 version of the Guidelines