**Ojay TULALI, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

CV. No. 98–00764 DAE,
CR. No. 95–01095 DAE.

United States District Court,
D. Hawai'i.

Dec. 16, 1998.

Ojay Tulali, Terminal Island, CA, pro se.

### ORDER DENYING PETITIONER'S PETITION

DAVID ALAN EZRA, District Judge.

Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing. After reviewing Petitioner's petition and the supporting and opposing memoranda, the court DENIES Petitioner's petition.

### BACKGROUND

On October 26, 1995, Petitioner Ojay Tulali ("Petitioner") was observed by Drug Enforcement Agency ("DEA") officers exiting an airplane that had just arrived from Los Angeles, California. He appeared to be anxiously looking through the crowd in an effort to locate someone. Eventually, he made eye contact with another individual, Fanny Ordonez ("Ordonez"), who had arrived on the same flight but had deplaned ahead of him. Petitioner approached Ordonez, but stopped approximately five feet from where she was standing. Without making eye contact, Petitioner told Ordonez to meet him at baggage claim. Petitioner then proceeded to baggage claim ahead of Ordonez.

DEA agents approached Petitioner and Ordonez separately to question them about suspected drug possession. After obtaining consent from Ordonez, an agent searched Ordonez, and felt a hard, bumpy object under her shirt that appeared to be drugs. The agent then placed Ordonez under arrest. The agent raised Ordonez's shirt and discovered that she was carrying crack cocaine. Both Ordonez's ticket and Petitioner's purchase receipt indicated that the two were traveling together. Thus, once the agent discovered that Ordonez was in possession of drugs, the agents arrested Petitioner as well. Both Ordonez and Petitioner were then charged with possession with intent to distribute cocaine. On January 18, 1996, after a meeting between Ordonez and Government officials, Petitioner was also charged with conspiracy to possess with intent to distribute cocaine.

On January 19, 1996, pursuant to a plea agreement, Ordonez pleaded guilty to possession with intent to distribute in excess of 50 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). As required by the plea agreement, Ordonez testified against Petitioner at his jury trial. She stated that Petitioner offered her $300 to transport the drugs from Los Angeles to Honolulu. Based in part on her "substantial assistance" in the prosecution of Petitioner, the Government recommended a reduced sentence for Ordonez. On May 27, 1996, Ordonez was sentenced to 30 months custody with a recommendation that she be placed in boot camp.

Meanwhile, on February 6, 1996, Petitioner was convicted of possession with intent to distribute in excess of 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 1) and conspiracy to possess with intent to distribute approximately 100 grams of cocaine base in violation of 21 U.S.C. § 846 (Count 2). On May 20, 1996, Petitioner was sentenced by this court to a term of 292 months imprisonment. At the sentencing phase, the Government claimed that Petitioner had indicated to the probation officer that he had made previous trips to Hawaii carrying illegal drugs.

Following his conviction and sentencing, Petitioner appealed his conviction to the Ninth Circuit. Petitioner claimed that his conviction violated due process because he was denied the opportunity to fully cross examine Ordonez. The Ninth Circuit affirmed Petitioner's conviction in an unpublished opinion. (No. 96–10251, March 6, 1997). Petitioner then sought review of the Ninth Circuit's decision to the United States Supreme Court, who denied his writ of certiorari (No. 96–9516, October 6, 1997). On September 19, 1998, Petitioner filed this instant Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255. The Government filed its response on December 2, 1998.

### DISCUSSION

Petitioner advances four arguments in support of the instant petition:

1) Petitioner's jury trial conviction was obtained by offering something of value to Ordonez in exchange for her testimony, in violation of 18 U.S.C. § 201(c)(2);

2) The 22–year sentence disparity between Petitioner and Ordonez is so extreme as

to violate Petitioner's due process rights;

3) Petitioner's sentence was based in part on false information regarding his past criminal drug trafficking activity; and

4) Petitioner was denied effective assistance of counsel at sentencing when counsel failed to seek or obtain a downward departure.

### I. *The Gratuity Statute*

Petitioner contends that the Government violated 18 U.S.C. § 201(c)(2) (the "Gratuity Statute") when it reduced Ordonez's sentence based, in part, on her testimony against Petitioner. The Gratuity Statute provides:

(c) Whoever ... (2) directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath of affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or for or because of such person's absence therefrom ... shall be fined under this title or imprisoned for not more than two years or both.

Petitioner contends that Ordonez's reduced sentence was something "of value" offered in exchange for her testimony and, as such, constituted a violation of the Gratuity Statute.

■ It is well-established in the United States that the government may use incentives to elicit relevant testimony or guilty pleas. "The disposition of criminal charges by agreement between the prosecutor and the accused ... is an essential component of the administration of justice." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The Ninth Circuit has consistently held that "the government is not precluded from using informants before or during trial simply because an informant may have a motive to falsify testimony or to entrap innocent persons." *United States v. Cuellar*, 96 F.3d 1179 (9th Cir.1996). "The fact of a bargain, or of the hope or expectation of leniency affects only the weight of the

testimony, not its admissibility." *Darden v. United States*, 405 F.2d 1054, 1056 (9th Cir. 1969).

■ With regard to the Gratuity Statute specifically, there is no indication that Congress intended to criminalize the accepted practice of providing incentives for testimony. On the contrary, Congress has specifically promulgated federal statutes permitting such conduct on the part of prosecutors. The Sentencing Guidelines authorize sentence reductions for witnesses who provide "substantial assistance in the investigation or prosecution of another person." 18 U.S.C. § 3553(e) (1985 & Supp. I 1998). Additionally, the immunity statutes allow prosecutors to grant immunity to witnesses in exchange for their testimony. 18 U.S.C. §§ 6001–6005 (1985 & Supp. I 1988). The Supreme Court has condoned this practice, noting that immunity "reflects the importance of such testimony, and the fact that many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in the crime." *Kastigar v. United States*, 406 U.S. 441, 446, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Thus, a review of related federal statutes indicates that Congress did not intend to prohibit the use of elicited testimony in federal prosecutions. To reach a contrary conclusion would require the court to assume that Congress intended to criminalize an act it had specifically authorized the government to perform.

This conclusion is in accord with those of other courts that have addressed the issue. *See, e.g., United States v. Cervantes–Pacheco*, 826 F.2d 310, 315 (5th Cir.1987) (noting that "[n]o practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime to which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence"); *United States v. Crumpton*, 23 F.Supp.2d 1218, 1219, 1998 WL 764804 (D.Colo.1998) (stating that "[a]greements which offer an inducement to a witness to testify are within the authority granted by Congress"); *United States v. Laureano*, 1998 WL 696006, at *2 (S.D.N.Y. Oct.7, 1998) (holding that "agreements which

[afford] cooperating accomplices leniency in exchange for testimony [do] not violate § 201(c)(2)"); *United States v. White,* 27 F.Supp.2d 646, 648, 1998 WL 758830 (E.D.N.C.1998) (finding that "18 U.S.C. § 201(c)(2) is inapplicable to government plea bargains designed to encourage witnesses to testify against other criminal defendants"). Only one circuit court has concluded that offering leniency in exchange for testimony violates § 201(c)(2), and that opinion was promptly withdrawn by the Tenth Circuit. *See United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998), *vacated,* No. 97–3178 (July 10, 1998) (en banc).

Were the court to conclude that the use of elicited testimony violates the Gratuity Statute, it would upset a crucial aspect of the enforcement and prosecution of crime. Offering leniency in exchange for testimony dates "back to the common law of England and has been recognized and approved by the United States Congress, the United States Courts and the United States Sentencing Commission." *United States v. Barbaro,* 1998 WL 556152, at *3 (S.D.N.Y. Sept.1, 1998). Petitioner has provided no justification for such a dramatic deviation from existing law, and there are strong reasons to resist such action. The court thus finds that the Government's reliance on Ordonez's testimony is consistent with 18 U.S.C. § 201(c)(2). Accordingly, Petitioner's Petition with respect to the Gratuity Statute is DENIED.[1]

## II. *Due Process*

 Petitioner also contends that his sentence violated his due process rights because it is disproportionate in two respects: 1) there is an extreme disparity between the sentence received by Ordonez and that received by Petitioner; and 2) there is also a disparity in the Sentencing Guidelines between the applicable sentences for crack cocaine and powder cocaine.

Regarding the first issue, Ordonez was sentenced to 30 months, while Petitioner was sentenced to 292 months. Petitioner contends that the disparity between the two

Defendants is unjustified in light of their similar criminal histories and their similar roles in the crimes charged in this case. Based on these contentions, Petitioner argues that the disparity in the Defendants' sentences constituted a violation of due process.

The Ninth Circuit has stated unequivocally that a defendant "cannot base a challenge to his sentence solely on the lesser sentence given by the district court to his codefendant." *United States v. Carpenter,* 914 F.2d 1131, 1135 (9th Cir.1990), *quoting United States v. Boyd,* 885 F.2d 246, 249 (5th Cir. 1989). Instead, to challenge his sentence, a defendant must demonstrate that the sentence resulted from mistaken information or an inaccurate application of the Guidelines. *Id.* There is no evidence, and indeed no allegation, of such a mistake in this case.

The only argument Petitioner advances regarding the relevance of the disparity between Petitioner's and Ordonez's sentence is based on the substantial downward departure received by Ordonez. Petitioner is essentially arguing that his sentence is unjust because his co-defendant received a substantially lesser penalty. In *Carpenter,* the Ninth Circuit rejected this very argument. There, the district judge imposed different sentences on co-defendants, based in part on his discovery between the sentencing dates that upward departures were permissible under the Guidelines. The Ninth Circuit upheld the sentences, despite the disparity, explaining that "the district judge's conclusion, if anything, was that [the co-defendant's] sentence was too short, not that the [defendant challenging his sentence] was too long. It would be folly to require district courts to persist in imposing a flawed sentence in the name of uniformity." *Id., citing United States v. Goot,* 894 F.2d 231, 238 (7th Cir. 1990). Here, Petitioner claims that the substantial downward departure received by Ordonez creates a sentencing disparity that violates his due process rights. The Ninth Circuit has considered this claim and squarely rejected it.

1. Petitioner also argues that his attorney's failure to move for suppression of Ordonez's testimony denied him the effective assistance of counsel. Because the court concludes that the use of Or-

donez's testimony was permissible in this case, it also rejects Petitioner's contention that his counsel erred in failing to move for suppression of Ordonez's testimony.

Furthermore, the disparity was justified by the facts before the court. In this case, Ordonez's "substantial assistance" in the prosecution of Petitioner explains her greatly reduced sentence in relation to Petitioner. Additionally, as Petitioner concedes, Petitioner's criminal history was more serious than that of Ordonez. Finally, the evidence before the court showed that Petitioner, not Ordonez, was the one who initiated and orchestrated the drug transfer to Hawaii. As the principal party in the illegal activity, he would naturally be subject to a more severe penalty.

A similar sentencing disparity was upheld by the Eighth Circuit on virtually identical facts. *See United States v. Thompson*, 51 F.3d 122 (8th Cir.1995). In *Thompson*, three defendants, including Thompson, were charged with counts of conspiracy to distribute and actual distribution of cocaine, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1). Two of the defendants entered into a plea agreement. Pursuant to the agreement, each of the two defendants agreed to testify against Thompson, and in exchange for their testimony, they were sentenced to eighteen and twenty-four months imprisonment. Thompson elected to be tried by a jury, was convicted, and the court sentenced him to 235 months in prison. On appeal, Thompson claimed that the sentence disparity between himself and his codefendants constituted a violation of due process because it had no basis in the facts. The Eighth Circuit rejected his argument, noting that while Thompson was younger and the drug distributions occurred at his co-defendant's house, the district court had found that Thompson was the leader and that his co-defendants were relatively minor players. The court also justified the disparity on the grounds that the co-defendants' testimony had provided substantial assistance to the government in the prosecution of Thompson.

Similarly, based on the factual findings of the district court in this case, it is clear that Petitioner's sentence was justified by his criminal activity. The fact that his sentence does not mirror that of his co-defendant is also justified by the facts of this case, as he appeared to be the principal participant and Ordonez provided substantial assistance to the Government in the prosecution of Petitioner. Finally, a mere disparity in sentences between co-defendants does not, in itself, constitute a constitutional violation. Accordingly, the court finds that the disparity between the sentences of Petitioner and Ordonez does not constitute a violation of Petitioner's due process rights.

█ Petitioner also contends that the disparity in the Sentencing Guidelines between the applicable sentences for powder and crack cocaine constitutes a violation of his constitutional rights. While this argument is generally made in the context of a racial challenge, Petitioner does not base his argument on disparate racial impact. Rather, he simply contends that "this court ought to recognize the inequities inherent in the guidelines for crack cocaine, as viewed by members of Congress and the Sentencing Commission." Petitioner's Petition at 11.

Even if true, "inequities inherent in the guidelines" do not constitute a constitutional violation. On the contrary, the Ninth Circuit has concluded that this disparity survives constitutional scrutiny. *See United States v. Dumas*, 64 F.3d 1427, 1429 (9th Cir.1995) (concluding that "the sentencing disparity survives rational basis review"). Thus, Petitioner's contention that his constitutional rights were violated by the disparity in sentencing between powder and crack cocaine is without merit.

For the foregoing reasons, the court rejects Petitioner's claim that his sentence violated his due process rights.

### III. *Erroneous Factual Basis for Sentencing*

Petitioner next contends that his sentence was based, in part, on an erroneous understanding of the facts. Specifically, Petitioner asserts that the Government erroneously informed the court that Petitioner told the probation officer that he had previously transported drugs into the State of Hawaii. Petitioner further claims that the court relied on this false information in determining Petitioner's sentence.

█ Petitioner did not raise this argument when he appealed his conviction. Where a defendant fails to raise a non-constitutional

challenge to his sentencing on direct appeal, the claim is deemed waived. *See United States v. Schlesinger,* 49 F.3d 483, 485 (9th Cir.1994) (holding that "this court follows the rule that nonconstitutional sentencing errors that have not been raised on direct appeal have been waived and generally may not be reviewed by way of 28 U.S.C. § 2255"). In such a circumstance, the court may only entertain a defendant's argument regarding an alleged sentencing error where it involves "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Thus, unless Petitioner can demonstrate that the alleged error constituted a "fundamental defect" causing a "complete miscarriage of justice," his claim may not be entertained by this court.

■ In this case, Petitioner provides no evidence to show that the allegedly erroneous statement caused a fundamental defect in the proceedings that created a miscarriage of justice. In fact, Petitioner cannot even demonstrate that the court relied on this statement in determining the appropriate sentence. At his sentencing, it was determined that the applicable guidelines were 292 to 365 months imprisonment. This determination was based on previous convictions and the offense level of the crime with which Petitioner was being charged. The court then imposed the minimum sentence within the guideline range. Thus, there is no evidence that the allegedly erroneous statement was considered by the court in arriving at the appropriate sentence. Under these circumstances, the court cannot conclude that the Government's statement created a "fundamental defect" resulting in a "complete miscarriage of justice." Accordingly, the court rejects Petitioner's claim that his sentence should be amended based on the allegedly erroneous statement made by the government.

## IV. *Ineffectiveness of Counsel*

Finally, Petitioner argues that his attorney's failure to seek a downward departure based on the disparity in the Sentencing Guidelines between the applicable sentences for convictions involving powder and crack cocaine constituted ineffectiveness of counsel. Alternatively, he contends that his attorney's failure to point out that the chemist's report indicated that the strength of the cocaine, which was 60%, was substantially lower than the typical purity of 75% to 90%.

■ *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets forth the two-part standard for evaluating claims of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). If a defendant fails to establish both parts of the test, the claim of ineffective assistance must be denied. *Strickland,* 466 U.S. at 700, 104 S.Ct. 2052. The defendant must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id.* at 687, 104 S.Ct. 2052. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Id.* at 688, 104 S.Ct. 2052. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* In order to satisfy the second element, the defendant must affirmatively prove prejudice. *Id.* at 693, 104 S.Ct. 2052. He must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Lastly, because of the difficulties inherent in evaluating such claims, the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. 2052.

■ In this case, Petitioner fails to meet both of the *Strickland* factors. First, his counsel's failure to address the disparity between powder and crack cocaine was arguably reasonable in light of the Ninth Circuit's conclusion that there is a rational basis for the distinction in the Sentencing Guidelines. *See Dumas,* 64 F.3d at 1429. Further, it appears that defense counsel's theory was one of actual innocence, so she did not challenge the findings of the chemist's report or the testimony of witnesses who claimed that the substance was crack cocaine. Given this

**1184**

approach, it would undermine the defense theory to emphasize either the type of substance Petitioner was charged with possessing or its relative strength. Thus, taking into account both the circumstances of this case and the presumption of reasonableness afforded to attorneys under the *Strickland* test, it appears that defense counsel's failure to draw attention to the disparity in the Guidelines between the sentences for powder and crack cocaine was reasonable.

Even were the court to find that defense counsel's actions were unreasonable, however, Petitioner has made no showing that he was prejudiced by his attorney's actions. Given the position of the Ninth Circuit on the disparity between the treatment of powder and crack cocaine in the Sentencing Guidelines, there is arguably little likelihood that the district court would have granted a downward departure on this basis. Thus, the court rejects Petitioner's claim that his attorney's failure to seek a downward departure constituted ineffective assistance of counsel.

### CONCLUSION

For the reasons stated above, the court DENIES Petitioner's Petition.

IT IS SO ORDERED.