**UNITED STATES of America, Plaintiff–Appellant–Cross–Appellee,**

v.

**Alex CAPERNA, Defendant–Appellee–Cross–Appellant.**

**Nos. 00–30149, 00–30163.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 2001

Filed June 1, 2001

Bonnie E. MacNaughton, United States Attorney's Office, Seattle, Washington, for the plaintiff-appellant.

Matthew N. Menzer, McNaul, Ebel, Nawrot, Helgren & Vance, P.L.L.C., Seattle, Washington, for the defendant-appellee, cross-appellant.

Before: DONALD P. LAY,* STEPHEN S. TROTT, and MARSHA S. BERZON, Circuit Judges.

TROTT, Circuit Judge:

The district court departed downward from Appellant Alex Caperna's applicable sentencing guidelines range because two of Caperna's co-defendants received what the court deemed to be lesser sentences in light of their relative culpabilities.

The government timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291 (2000) and 18 U.S.C. § 3742(b) (2000). We conclude that a district court may not depart from an applicable guidelines range on the basis of sentence disparity among co-defendants unless the co-defendants were convicted of the same offense as the defendant. In this case, because one of the two co-defendants used as a barometer for judging sentence disparity was convicted of an entirely different offense than Caperna, we vacate Caperna's sentence and remand the case to the district court for resentencing.

## I

### Background

Alex Caperna was a small part of a large marijuana importing organization. His job was to secure a stash house for a large shipment of marijuana scheduled to arrive in Washington state, and to hire a trusted person to drive the shipment from the offload site to the safe house.

The government charged Caperna with conspiracy to import over 1,000 kg of marijuana with the intent to distribute and with attempted possession of over 1,000 kg of marijuana. *See* 21 U.S.C. §§ 841(b)(1)(A), 952(a), 963 (2000). Both counts carried

minimum ten-year statutory sentences. *See* 21 U.S.C. § 960(b)(1)(G).

The government offered to drop the conspiracy and attempted possession charges if Caperna would plead guilty to violating 18 U.S.C. § 1952(a)(3) (2000) (Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises) ("ITAR"). The deal was appealing because the ITAR offense carried a statutory maximum sentence of five years in prison, instead of the ten-year statutory minimums carried by the charges alleged in the indictment. *See* 18 U.S.C. § 1952(a)(3)(A). However, the deal was not all roses for Caperna because it was "wired" to the agreements of the heavy hitters of the narcotics organization, William Farrell and Caperna's long-time friend, Gary Minore. If any of the three balked at the deal, the government could revoke the others' offers.

Though not without hesitation, Caperna eventually accepted the government's offer and pled guilty to violating ITAR. At a sentencing hearing, the district court calculated Caperna's applicable guideline range to be fifty-seven to seventy-one months. The court departed downward from this range and sentenced Caperna to thirty-six months in prison because, in the court's view, sentencing Caperna within the guidelines range would have created a disparity between Caperna's sentence and the sentences of two other similarly culpable co-defendants, John Ricker and Patrick Cliett.[1]

## II

### Discussion

The government appealed Caperna's sentence, arguing that the court improper-

---

* The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. The court concluded that the sentence imposed on a third co-defendant, David Scofield, was not an appropriate benchmark from which to judge Caperna's sentence.

ly departed downward on the basis of co-defendant sentence disparity. Caperna responds that the district court properly departed downward on that basis. In the alternative, Caperna contends that various other grounds, such as aberrant behavior, good character, strong family ties, and the allegedly coercive nature of the plea agreement, support the district court's downward departure.

## A. Standard of Review

■■■ "[W]hether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point." *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). However, if a factor is a permissible basis for departure under some circumstances, we review for an abuse of discretion the court's ultimate decision to depart. *Id.; see also United States v. Sanchez–Rodriguez*, 161 F.3d 556, 559 (9th Cir.1998) (en banc). Finally, "[t]he district court's factual findings in the sentencing phase are reviewed for clear error." *United States v. Frega*, 179 F.3d 793, 811 n. 22 (9th Cir.1999).

## B. Analysis

### 1. Departure on the Basis of Co–Defendant Sentence Disparity

Under the federal sentencing guidelines, a district court may depart from the applicable guidelines range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (2000).

Prior to 1996, we consistently held that disparity among co-defendants' sentences was never an appropriate factor for de-

parting from an applicable guidelines range. *See, e.g., United States v. Mejia*, 953 F.2d 461, 467–68 (9th Cir.1991) (disallowing downward departure for the purpose of avoiding unequal treatment of co-defendants); *United States v. Carpenter*, 914 F.2d 1131, 1135–36 (9th Cir.1990) (same); *United States v. Enriquez–Munoz*, 906 F.2d 1356, 1359–60 (9th Cir.1990) (disallowing upward departure for the purpose of equalizing sentences among co-defendants).

■■■ Then, in 1996, the Supreme Court for the first time provided substantial guidance to sentencing courts when determining whether a particular factor is a permissible basis for departure. *See Koon*, 518 U.S. at 92–96, 116 S.Ct. 2035. Some factors, such as race, sex, national origin, creed, religion, socioeconomic status, lack of guidance as a youth, drug or alcohol dependence, and economic hardship, are never proper bases for departure. *Id.* at 93, 116 S.Ct. 2035; *see also* U.S.S.G. §§ 5H1.4, 5H1.10, 5K2.12 (2000). With the exception of these factors, however, sentencing courts have discretion to determine whether a factor warrants departure in a particular case. *Koon*, 518 U.S. at 93, 116 S.Ct. 2035.

Three years later, in *United States v. Daas*, we addressed whether, in light of *Koon*, a district court has the authority to depart downward on the basis of disparity in sentencing among co-defendants. 198 F.3d 1167, 1180–81 (9th Cir.1999). Following *Koon*'s instruction, we observed that the guidelines do not specifically prohibit departures on the basis of disparate co-defendant sentences. *Id.* Accordingly, we held that a "[d]ownward departure to equalize sentencing disparity is a proper ground for departure under the appropriate circumstances." *Id.* We remanded the case without expressly identifying what

circumstances would make a departure appropriate and what circumstances would not. *Id.*

■ In this appeal, the government first contends that it is not appropriate for a sentencing court to depart on the basis of co-defendant sentence disparity unless the co-defendant was convicted of the same offense as the defendant. We agree.

An en banc case decided after Caperna's sentencing mandates this conclusion. *See United States v. Banuelos–Rodriguez,* 215 F.3d 969, 977–78 (9th Cir.2000) (en banc). The issue in *Banuelos–Rodriguez* was whether a district court could depart downward on the basis of the differing charging policies of various U.S. Attorneys' offices. *Id.* Answering that question negatively, we cited and analyzed *Mejia, Carpenter,* and *Enriquez–Munoz,* and stated that they stood for the proposition that "the equalization of sentences is an improper ground for departure if the court is attempting to equalize the sentences of co-defendants who are *convicted* of committing *different* offenses, even if their behavior was similar." *Id.* at 978 (emphases in original).

■ We acknowledge that *Banuelos–Rodriguez* relies on *Mejia, Carpenter,* and *Enriquez–Munoz* without discussing *Daas. See id.* Nevertheless, we do not believe that *Banuelos–Rodriguez* and *Daas* are in conflict. To the contrary, we see them as being perfectly consistent.[2]

*Banuelos–Rodriguez* did not hold that a court may never depart on the basis of sentence disparity among co-defendants. Rather, the en banc majority merely stated that a district court may not depart

based on co-defendant sentence disparity if the co-defendant was convicted of a different offense than the defendant. *Id.* at 978. In other words, *Banuelos–Rodriguez* simply began where *Daas* left off and identified one particular circumstance that is not "appropriate" for a district court to use as a ground to depart on the basis of co-defendant sentence disparity. We adhere to *Banuelos–Rodriguez'* teaching, and confirm that a district court may not depart from an applicable guidelines range on the basis of co-defendant sentence disparity unless the co-defendant used as a barometer for judging the disparity was convicted of the same offense as the defendant.

The government asks us to go even further by ruling that a sentencing court may not depart on the basis of co-defendant sentence disparity if the co-defendant cooperated with the government and the defendant did not. The government argues that the sentence disparity is probably the result of the co-defendant's cooperation with the government. It would be unfair, the government claims, to confer on the non-cooperating defendant the benefit of his co-defendant's cooperation.

■] We recognize the general logic of the government's argument and acknowledge that the Tenth Circuit has adopted a similar rule. *See United States v. Caldwell,* 219 F.3d 1186, 1195 (10th Cir.2000) (precluding downward departure based on sentence disparity "when the sentences are dissimilar because of a plea bargain") (quoting *United States v. Gallegos,* 129 F.3d 1140, 1144 (10th Cir.1997)). However, we conclude that the decision whether to depart based on sentence disparity

**2.** In any event, to the extent *Daas* and the subsequent en banc decision in *Banuelos–Rodriguez* were inconsistent, we, of course, would be bound by the en banc case. *See Rand v. Rowland,* 154 F.3d 952, 964 (9th

Cir.1998) (en banc) (Reinhardt, J., concurring) ("After all, overruling precedent is an important function that is expressly reserved to the en banc court, and a panel is ordinarily not free to do so.")

among cooperating and non-cooperating defendants is properly left within the sound discretion of the sentencing judge.

Unlike the Tenth Circuit, we do not think that affording district courts the discretion to account for unforeseen circumstances regarding differential co-defendant cooperation in any way "invade[s] the United States Attorney's broad prosecutorial discretion." *Gallegos,* 129 F.3d at 1144. The United States' long-standing practice of offering lesser sentences to defendants who cooperate with the government is neither novel nor questioned, and is well-known to sentencing courts. In most cases, it will be inappropriate for a sentencing court to give a non-cooperating defendant the benefit of his co-defendant's cooperation. However, there may be rare cases when just such an adjustment is warranted. We believe that the sentencing judge is in the best position to identify those exceptional instances and to explain on the record why a departure is warranted.

In fact, the procedural posture of *Daas* supports this conclusion. 198 F.3d at 1180–81. In *Daas,* the defendant was charged with unlawfully distributing ephedrine in violation of 21 U.S.C. § 841(d)(2). *Id.* at 1171. Daas's co-defendants cooperated with the government by surreptitiously recording conversations with Daas and by testifying against him at trial. *Id.* at 1171–72. After his conviction, Daas asked the sentencing court to depart downward from the applicable guidelines range because his co-defendants had received substantially lower sentences. *Id.* at 1180. Because the sentencing court incorrectly assumed that it did not have the authority to depart downward on the basis of co-defendant sentence disparity,

we vacated Daas's sentence and remanded his case to the sentencing court with instructions to determine whether Daas's case presented circumstances appropriate for downward departure. *Id.* at 1180–81. The simple fact that we vacated and remanded Daas's sentence, even though only his co-defendants cooperated with the government, suggests that sentencing courts do have discretion to depart from an applicable guidelines range under such circumstances. *See id.*

With these principles in mind—which we note were not established at the time of Caperna's sentencing—it is clear that the district court erred by departing downward in Caperna's case. In deciding whether to depart downward, the district court considered two co-defendants' sentences:

(1) John Ricker who pled guilty to an ITAR offense and was sentenced to sixty months.

(2) Patrick Cliett who pled guilty to conspiring to import and distribute marijuana and was sentenced to forty-eight months.

■ Thus, there is no dispute that the district court relied at least in part on Cliett's forty-eight month sentence. This was erroneous because Cliett was convicted of a different offense (conspiracy to import marijuana) than was Caperna (ITAR).[3]

## 2. Departure Based on Other Factors

Caperna alternatively argues that even if the district court erred in departing on the basis of his co-defendants' sentences, other grounds, such as aberrant behavior, good character, strong family and community ties, and the coercive nature of the

3. Because the district court relied at least in part on Cliett's sentence, we are not presented with the question of whether the district court would have abused its discretion if it had departed downward based exclusively on Ricker's sentence.

government's "wired" offer, support the court's downward departure. The government responds that the district court expressly denied these other grounds. As discussed below, the sentencing court expressly rejected Caperna's aberrant behavior argument, but did not explicitly accept or reject any of the other grounds now raised.

With respect to Caperna's argument that he deserved a downward departure based on "aberrant behavior," the district court unambiguously said, "[a]berrant behavior, in my opinion, is not justified here as a basis for downward departure."

In contrast, as to Caperna's contention that the coercive nature of the "wired" plea warranted a downward departure, the court was somewhat equivocal, stating: "[A] wired deal may be perfectly legal, but I've got to tell you as a sentencing judge, I don't like it one bit."

Similarly, the district court commented favorably on Caperna's good character and his strong family ties:

> [T]here have been few cases when I've had as many letters from as many different people telling me about all the good things this defendant has done. Sometimes we lose focus of that in connection with trying to determine what an appropriate sentence is. But I can assure the defendant that I have read all of those letters and considered them carefully in connection with determining what the appropriate sentence is.

Contrary to the government's contention, the court did not reject outright these other factors in departing downward. However, contrary to Caperna's argument, the court did not explicitly rely on them as independent bases for departure.

1. The panel unanimously finds this case suitable for decision without oral argument.

## III

## Conclusion

Accordingly, we vacate Caperna's sentence and remand the case to the district court in order to give that court the opportunity to address these other grounds, or perhaps to decide whether Caperna is entitled to a downward departure based solely on the sentence received by Ricker. Again, we express no position on any of these questions and leave the decision to the sound discretion of the sentencing court.

VACATED AND REMANDED