# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2070

_____

United States of America,             *
                                     *

           Appellee,          *
                                     *   Appeal from the United States

   v.                         *   District Court for the
                                     *   District of South Dakota.

Mike Chase,                    *
                                     *

           Appellant.        *

_____

Submitted: January 9, 2006
Filed: July 3, 2006
_____

Before LOKEN, Chief Judge, WOLLMAN, and RILEY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Mike Chase appeals from the judgment and sentence entered by the district court[1] on the jury's finding that Chase was guilty of voluntary manslaughter. We affirm.

_____

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

# I.

At about 6:00 p.m. on August 23, 2004, Chase and several of his family members and friends gathered at Chase's mother's home in the Eastridge housing development on the Pine Ridge Indian Reservation in South Dakota. Clay Gibbons was also present. Chase and Gibbons argued, whereupon Gibbons threatened Chase with a knife, which incorporated brass knuckles as part of its handle. Chase disarmed Gibbons, and Gibbons was asked to leave, which he did.

About ten or fifteen minutes later, a group of approximately fifteen or twenty people—armed with metal bars, boards, commodity cans, and rocks—gathered in a nearby yard. Witnesses offered differing testimony as to whether Winston Bad Bear was part of this group or was instead a peacemaker separate from the armed group. One witness testified that Bad Bear had earlier stated that he had seen a gang at Chase's home and that he was going to go up there to handle it.

Chase saw the group form in the nearby lot. A witness testified that Chase said that they should confront the group. Armed with the knife that he had earlier taken from Gibbons, Chase left his mother's house and moved toward the group. Three or four of his friends, who were also armed, followed him. People were yelling and throwing objects at each other. One group member threw a crowbar, which hit Chase's friend in the head and injured him.

Witness testimony differs as to whether Chase first approached Bad Bear or vice versa. In any event, the two men scuffled, and Chase stabbed Bad Bear several times. Chase also kicked Bad Bear, as the latter lay on the ground, either to prevent Bad Bear from getting up or to free Chase's leg. Chase, uninjured, then fled to his mother's house. Bad Bear later died from the knife wounds. Chase was indicted on a count of second degree murder.

Chase testified that he believed that the rival group was going to attack him because he had a history of violence with this group. Chase admitted, however, that Bad Bear was unarmed. He sought to present under Federal Rule of Evidence 404(b) evidence of prior attacks on himself and his family by members of the rival group. These acts included: (1) an assault on Chase by a member of the rival group in the summer of 2003, (2) an assault on Chase's cousin by members of the rival group in January 2004 that required the cousin to be hospitalized for several days, (3) an attempted armed assault on Chase by members of the rival group in the spring of 2004, and (4) an attempted stabbing of Chase by members of the rival group in April 2004. The district court sustained the government's objection and excluded the proffered evidence.

As part of his defense, Chase subpoenaed Dana Fast Horse to testify at trial. Fast Horse had driven her car into the crowd on the evening in question, resulting in a serious injury to a member of the group, for which Fast Horse was later indicted. Fast Horse indicated that she would exercise her Fifth Amendment right against self-incrimination, and the district court released her from the subpoena. Chase then sought to offer into evidence, pursuant to Federal Rules of Evidence 804(b)(3) and 807, Fast Horse's statement that she had driven her car into the rival group and was thereupon attacked by the mob. The district court sustained the government's objection and excluded the statement.

During his rebuttal closing argument, the prosecutor asked the jury, "Did Winston Bad Bear need to die? Did he deserve to die that night? Did he deserve to be bludgeoned that many times? Based on what we have learned here today that's what you got to ask yourself." Tr. at 695-96. The district court sustained Chase's objection to these comments and told the members of the jury that "you need to look at the jury instruction that I gave you on the elements of the crime and determine whether or not guilty or not guilty." Tr. at 696.

The jury found Chase guilty of voluntary manslaughter and acquitted him on the second degree murder count. Sentencing occurred on April 5, 2005. Pursuant to the Presentence Investigation Report, the district court applied the 2003 version of the U.S. Sentencing Guidelines and determined that Chase had a base offense level of 25. Because Chase had no criminal history points, the district court determined that the applicable guidelines range was fifty-seven to seventy-one months. The district court determined, however, that Chase's use of a dangerous weapon and his extreme conduct warranted an upward departure, raising the applicable guidelines range to 87 to 108 months. The district court then sentenced Chase to ninety-six months in prison.

## II.

Chase first argues that the district court erred in denying his motion for a judgment of acquittal. We review *de novo* the denial of a motion for judgment of acquittal. United States v. Water, 413 F.3d 812, 816 (8th Cir. 2005). Our review, however, is narrow. United States v. Sadler, 234 F.3d 368, 372 (8th Cir. 2000). We view "the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Claybourne, 415 F.3d 790, 795 (8th Cir. 2005). We will reverse only if we determine that no reasonable jury could have found the defendant guilty. Id.

For Chase to be convicted of voluntary manslaughter, the government had to prove beyond a reasonable doubt that Chase: (1) voluntarily, intentionally, and unlawfully killed Bad Bear; (2) acted in the heat of passion caused by adequate provocation; and (3) was not acting in self defense.[2] Jury Instructions, Tr. at 636-37; see 18 U.S.C. §§ 1112, 1153. As set forth above, the government presented evidence

---

[2]The parties stipulated that Chase is an Indian and that the offense took place in Indian country.

that Chase approached Bad Bear, who was unarmed, and stabbed him numerous times. It also offered testimony that Bad Bear was not part of the rival group but was instead a peacemaker. Finally, the government offered evidence that Chase had approached the rival group and could have avoided encountering it. On the basis of this evidence, a reasonable jury could have found Chase guilty beyond a reasonable doubt of voluntary manslaughter, and thus the district court did not err in denying his motion for judgment of acquittal.

## III.

Chase next argues that the district court erred in excluding exculpatory evidence probative of his claim of self defense. We review for clear abuse of discretion a district court's evidentiary rulings. United States v. Pirani, 406 F.3d 543, 555 (8th Cir. 2005) (en banc).[3]

Rule 404 provides that evidence of a person's character is generally not admissible for the purpose of proving action in conformity therewith. Fed. R. Evid. 404. Evidence of other crimes, wrongs, or acts may, however, be admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). When evidence is offered to prove state of mind, we presume that the evidence is admissible for that purpose. United States v. Smith, 383 F.3d 700, 706 (8th Cir. 2004). Such evidence is admissible if it is: (1) relevant to a material issue, (2) similar in kind and close in time to the event at issue, and (3) supported by sufficient evidence to support a finding by the jury that the act occurred. See United States v. Johnson, 439 F.3d 947, 952 (8th Cir. 2006). If, however, the probative value of the evidence is substantially

---

[3]We note that Pirani's holding on this issue implicitly overruled our holding in United States v. Blue Bird, 372 F.3d 989, 991 (8th Cir. 2004), that we review *de novo* a district court's admission of evidence.

outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative issues, the evidence may be excluded under Rule 403. Fed. R. Evid. 403; Johnson, 439 F.3d at 952. In making this determination, we give great deference to the district court's judgment. United States v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002).

As set forth above, Chase proposed to introduce evidence of prior attacks on himself and a family member by members of the rival group that he allegedly feared would attack him. The district court excluded this evidence, pointing to the absence of any authority that would support the admission of evidence of an assault against a defendant by a party who was not the victim. The district court also expressed its concern that the proffered evidence would involve "collateral mini trial[s]" on the four incidents and would be prejudicial, confusing, and misleading. Tr. of Pretrial Conference at 16. Accordingly, the district court excluded the evidence under Rule 403. Chase challenges this ruling, arguing that the evidence would have assisted the jury in evaluating his state of mind at the time he was confronted by the rival group.

According the district court the deference to which it is entitled in making Rule 403 determinations, we conclude that the district court did not abuse its discretion in excluding this evidence. Whatever probative value the evidence may have had in bearing upon Chase's state of mind, it was properly determined by the district court to be outweighed by its potential to confuse and distract the jury. In any event, Chase was allowed to testify generally about his history of violence with the rival group and thus was able to develop his claim that he acted out of fear for his life in stabbing Bad Bear. Cf. United States v. Milk, 447 F.3d 593, 600-01(8th Cir. 2006); United States v. Waloke, 962 F.2d 824, 830 (8th Cir. 1992).

**IV.**

Chase contends that the district court erred in excluding Dana Fast Horse's statement, arguing that the statement should have been admitted under Rule 804(b)(3) or 807.

Rule 804(b)(3) provides that a statement against a declarant's own interests is not excluded by the hearsay rule if the declarant is unavailable as a witness. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible, however, "unless corroborating circumstances clearly indicate the trustworthiness of the statement." Fed. R. Evid. 804(b)(3). Only the portions of an unavailable witness's statement that genuinely inculpate her are admissible. See Williamson v. United States, 512 U.S. 594, 600-01 (1994). In determining whether a statement is genuinely inculpatory, a court must examine the circumstances under which the statement was given. Id. at 603-04. A statement is not truly self-inculpatory if it merely attempts to shift blame or curry favor. See id. at 603; United States v. Roach, 164 F.3d 403, 411 (8th Cir. 1998). The determination of a declarant's credibility and motivation in making a statement is generally within the discretion of the district court. Roach, 164 F.3d at 411.

The district court determined that the only part of Fast Horse's statement that inculpated her was her admission that she was the driver of the vehicle that plowed into the crowd. We agree with the district court's assessment. Further, we agree that this fact was irrelevant to any of the issues in Chase's trial, and thus the district court properly excluded it.

Rule 807 provides that a "statement not specifically covered by [the hearsay exceptions of the Federal Rules of Evidence] but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that": (1) "the statement is offered as evidence of a material fact," (2) "the

statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," and (3) "the general purposes of [the Rules] and the interests of justice will be best served by admission of the statement into evidence." Fed. R. Evid. 807.

We agree with the district court that Fast Horse's statement lacked circumstantial guarantees of trustworthiness equivalent to the hearsay exceptions provided for in Rules 803 and 804. At the time Fast Horse made the statement, she was a suspect in an assault case as the result of her use of an automobile to run down an individual of the rival group, and thus she had motive to implicate others and downplay her role in the incident. Accordingly, the district court did not err in excluding the statement.

## V.

Chase next argues that the prosecutor's rebuttal closing argument, set forth earlier in this opinion, improperly appealed to the emotions and prejudices of the jury and denied Chase his Fifth Amendment right to a fair trial. We afford the district court broad discretion in controlling closing arguments, and we will overturn a conviction on this basis only when prosecutorial misconduct could reasonably have affected the jury's verdict. See, e.g., United States v. Holmes, 413 F.3d 770, 774 (8th Cir. 2005); Devine v. United States, 403 F.2d 93, 96 (10th Cir. 1968).

In examining whether prosecutorial misconduct warrants reversal, we determine whether the prosecutor's remarks or conduct were in fact improper and whether such remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial. United States v. Frokjer, 415 F.3d 865, 873 (8th Cir. 2005). We assess the prejudicial effect of misconduct by considering: (1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the

defendant's guilt, and (3) the curative actions taken by the trial court. <u>Holmes</u>, 413 F.3d at 774-75.

Even if the prosecutor's comments were improper in this case, we conclude that they did not prejudicially affect Chase's substantial rights so as to deprive him of a fair trial. Although the comments were made during the prosecutor's rebuttal argument, leaving Chase with no opportunity to respond to them, the district court immediately gave a curative instruction. Chase has failed to demonstrate that this instruction was inadequate, and he did not request further instruction by the court. The comments constituted an isolated event during the course of the trial and were not so inflammatory or egregious as to warrant reversal. <u>See</u> <u>United States v. Franklin</u>, 250 F.3d 653, 662 (8th Cir. 2001).

## VI.

Chase also argues that the district court erred in departing upward from the guidelines range of fifty-seven to seventy-one months pursuant to guidelines §§ 5K2.6 and 5K2.8. We review for abuse of discretion the district court's decision to depart from the applicable guidelines range. <u>United States v. Hawkman</u>, 438 F.3d 879, 882-83 (8th Cir. 2006).

## A.

Chase contends that the district court erred in imposing an upward departure under § 5K2.6 of the guidelines for Chase's use of a weapon or dangerous instrumentality in his offense. Although Chase concedes that he used a weapon in stabbing Bad Bear, he argues that the guideline provision for voluntary manslaughter already takes into account the use of a weapon or dangerous instrumentality, rendering a § 5K2.6 departure inappropriate.

-9-

Departures are appropriate if the sentencing court finds that there exists an aggravating or mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." U.S.S.G. § 5K2.0. The guidelines provide that

> sentencing courts [are] to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, a court may consider whether a departure is warranted.

U.S.S.G. § 1A1.1, cmt. n.4(b). The guidelines identify some of the circumstances that the Sentencing Commission may not have adequately taken into account in determining the applicable guidelines range. U.S.S.G. § 5K2.0. If one of these circumstances is present in the case and the specific offense guideline has not taken it into account or it is present to an exceptional degree, a departure may be appropriate on this ground. See U.S.S.G. § 5K2.0.

Other circuits disagree as to whether a § 5K2.6 departure is appropriate in offenses similar to voluntary manslaughter. Both the Seventh and the Ninth Circuits have determined that such a departure may be appropriate when the underlying offense is solicitation of murder.[4] United States v. Cook, 102 F.3d 249, 250 (7th Cir.

---

[4]The defendant in the Ninth Circuit case had pleaded guilty to use of a facility of interstate commerce with intent to commit murder and causing others to travel in interstate commerce with the intent that murder be committed in violation of 18 U.S.C. § 1952(a), as well as to conspiracy in violation of 18 U.S.C. § 371. United States v. Carpenter, 914 F.2d 1131, 1133 (9th Cir. 1990), *superseded on other grounds*, United States v. Caperna, 251 F.3d 827, 830 (9th Cir. 2001).

1996); United States v. Carpenter, 914 F.2d 1131, 1134 (9th Cir. 1990), *superseded on other grounds*, United States v. Caperna, 251 F.3d 827, 830 (9th Cir. 2001). These Circuits reasoned that the applicable offense guidelines did not take into account the use or possession of weapons. Cook, 102 F.3d at 250; Carpenter, 914 F.2d at 1134. The Fourth and Tenth Circuits, however, have determined that a § 5K2.6 departure is inappropriate when the underlying offense is murder. United States v. Barber, 119 F.3d 276, 285 (4th Cir. 1997) (en banc); United States v. Kelly, 1 F.3d 1137, 1142 (10th Cir. 1993). The Fourth Circuit reasoned that although the applicable offense guideline did not take into account the use of a weapon or dangerous instrumentality, the use of a weapon to commit a second-degree murder was within the heartland of conduct encompassed by the offense guideline. Barber, 119 F.3d at 285. It acknowledged that murder could be committed without a weapon or dangerous instrumentality, but concluded that the typical murder case involves the use of a dangerous weapon. Id. In contrast, the Tenth Circuit has explained that the "fact that the end result of a defendant's conduct is murder necessarily implies that the instrumentality effectuating the death of the victim was dangerous in the manner it was used. Therefore, murder must subsume the use of a dangerous instrumentality." Kelly, 1 F.3d at 1142.

We agree with the Seventh and Ninth Circuits' analyses and conclude that a § 5K2.6 departure may be appropriate when the underlying offense is voluntary manslaughter. The voluntary manslaughter guideline has not already accounted for the use of a weapon or dangerous instrumentality; it does not mention the use of weapons or dangerous instrumentalities, nor are weapons or dangerous instrumentalities inherent in the offense of voluntary manslaughter. See U.S.S.G. § 2A1.3. Voluntary manslaughter can be committed without the use of a weapon or dangerous instrumentality. Because the use of weapons or dangerous instrumentalities is identified by the guidelines as a factor for departure, we need not go further to determine whether their use is typical in voluntary manslaughter cases. Cf. United States v. Lighthall, 389 F.3d 791, 796 (8th Cir. 2004) (stating that "because

-11-

diminished capacity is not taken into account under [the offense guideline], the district court did not . . . have to find 'the factor is present to an exceptional degree'"). Accordingly, in light of Chase's use of a weapon in killing Bad Bear, the district court did not err in granting an upward departure pursuant to § 5K2.6.

**B.**

Chase also argues that the district court erred in granting an upward departure pursuant to § 5K2.8 of the guidelines. This section provides that if "the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guidelines range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8. Although this departure is most often imposed for exceptionally egregious behavior, we affirmed a § 5K2.8 departure in a case in which the defendant had a history of domestic abuse and failed to seek prompt medical attention for the victim. United States v. Keester, 70 F.3d 1026, 1027-28 (8th Cir. 1995) (per curiam). Chase's conduct, however, was relatively egregious. He stabbed the unarmed Bad Bear at least five times, puncturing Bad Bear's organs. Chase then proceeded to kick his prostrate, immobilized victim, a gratuitous infliction of injury. Chase thereupon fled the scene, leaving Bad Bear to bleed from the wounds that resulted in his death. Finally, Chase admitted that he had a history of violence with the rival group. Given these circumstances, the district court did not abuse its discretion in granting the upward departure.

**VII.**

Finally, Chase argues that the ninety-six month sentence imposed is unreasonable. We review for abuse of discretion the reasonableness of the sentence imposed by the district court. United States v. Dieken, 432 F.3d 906, 909 (8th Cir. 2006); see also United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006).

Sentences varying from the guidelines range are reasonable so long as the district court offers appropriate justification under the 18 U.S.C. § 3553(a) factors that is proportional to the extent of the departure.  See United States v. Claiborne, 439 F.3d 479, 481 (8th Cir. 2006).

Chase's sentence of ninety-six months' imprisonment represents only an eighteen percent variance from the guidelines range of fifty-seven to seventy-one months.  This departure is not extraordinary, and we conclude that the sentence is reasonable in light of the nature and circumstances of the offense and Chase's history of violence.

The judgment is affirmed.

_____