# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1898

_____

United States of America

*Plaintiff - Appellee*

v.

Charlene Wanna

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: November 22, 2013
Filed: March 7, 2014

_____

Before RILEY, Chief Judge, BRIGHT and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

A jury convicted Charlene Wanna of misapplication of funds from an Indian tribal organization and aiding and abetting in violation of 18 U.S.C. §§ 1163 and 2. The district court[1] sentenced Wanna to 33 months imprisonment. Wanna appeals her

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

conviction and sentence. Having appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.   BACKGROUND

Charlene Wanna is a member of the Heipa/Veblen District (district) of the Sisseton-Wahpeton Oyate Sioux Tribe (tribe), one of seven districts into which the tribe is divided. From her election in 2005 to her resignation in 2009, Wanna served as secretary on the district's four-person governing board. In 2007, the board consisted of Wanna, as secretary; her sister Jacqueline Wanna (Jackie), as vice chairman; Lloyd LaBelle Jr., as chairman; and Tamera Strutz, as treasurer. All four board members had authority to issue checks on district accounts.

In January 2007, the enrolled members of the district met to set the compensation for the board members. The district members resolved to pay Wanna $600 per month to attend board meetings. The member meeting minutes—which Wanna recorded as secretary—indicate "any [board] meetings other than these must be brought back to the district meeting for approval to see if the district wants to pay additional meetings and board members must be paid once a month." Wanna also served on other boards for the district, including the construction board, for which Wanna received additional compensation. In addition to the positions she held within the district, Wanna was a full-time employee at the post office.

In district elections in January 2009, Wanna retained her position, but Jonathan Gill defeated LaBelle to become district chairman. Before Gill took office, Wanna resigned. Upon taking office, Gill ordered an audit of the district's finances in response to a request from the district's members. The audit and resulting criminal investigation revealed a large amount of money was missing.[2] Investigators learned

---

[2]The district coordinator also testified that two binders containing the district's records of check requests and paid checks went missing in February 2007.

Wanna and her fellow board members greatly overcompensated themselves, receiving district funds far in excess of what they were entitled to receive.

From January 2007 to January 2009, Wanna cashed or deposited 436 checks totaling $111,465 made payable to her from district accounts—many of which she wrote to herself. Often, Wanna would receive multiple checks issued the same day and occasionally would receive duplicate payments for the same meeting. Nearly half of the payments Wanna received had absolutely no supporting documentation.

Wanna also authorized a total of 679 checks on district accounts made payable to her fellow board members. In all, members of the board received over $430,000 during the two-year period covered by the indictment. The district's accounts further incurred $20,400 in overdraft fees as a result of the board's frenetic check writing.

At trial, Jackie, who pled guilty to misapplication of tribal funds, testified Wanna typically scheduled the frequent board meetings—often at casinos. Wanna would charge the district $150 to arrange meetings and then charge as much as $600 to attend them. Jackie confessed that at some of the meetings Wanna arranged, the four board members "got together just to write each other checks" without actually holding a meeting or conducting any district business. Wanna and the rest of the board would write checks to each other, cash them at the casino, and gamble the money away. Jackie further testified that Wanna approached her with the check-writing scheme after Wanna learned Strutz had gotten away with using Wanna's signature stamp to obtain over $10,000 of district funds. Wanna told Jackie, "[I]f [Strutz] can do that, we can also do that." After that conversation, Jackie and Wanna began writing checks to each other for meetings that were never held, even though Jackie knew it was wrong and illegal.

A district member who worked as a cashier at one of the tribal casinos at which the board met corroborated Jackie's testimony about the board's frequent meetings

at the casino. Explaining she and other casino workers were frustrated by the board's "excessive" meetings, the cashier testified Wanna and the rest of the board often cashed multiple checks dated the day of the meetings—sometimes staying to gamble while other times taking the cash and leaving.

Taking the stand in her own defense, Wanna denied any wrongdoing. Wanna adamantly denied Jackie's testimony about Wanna's plan to make extra money through sham meetings. Asserting board members were paid for each meeting they attended, Wanna maintained every check she received was compensation for work she actually performed for the district. Wanna claimed the district members approved the board's checks by approving Strutz's monthly treasurer reports. Yet Wanna admitted she did not have copies of the treasurer's reports and had never actually seen them, so she could not say whether they included information about the hundreds of checks the board members had written to each other. Wanna blamed the district's missing books for the complete lack of documentation for more than $50,000 in checks Wanna cashed or deposited.

At the close of the government's case and again at the close of the evidence, Wanna moved for judgment of acquittal, which the district court denied. Before submitting the case to the jury, the district court instructed the jury on the elements of the crime charged and Wanna's good-faith defense. On November 27, 2012, the jury found Wanna guilty, and the district court entered judgment.

Before sentencing, the United States Probation Office prepared a presentence investigation report (PSR) calculating an advisory United States Sentencing Guidelines (U.S.S.G. or Guidelines) range of 33 to 41 months imprisonment (level 20, category I). The PSR also indicated Wanna suffered from various health issues that might warrant a downward departure under U.S.S.G. § 5H1.4. The government responded it would "resist any requested departure or variance based upon health concerns or otherwise."

On April 16, 2013, the district court held a sentencing hearing at which the district court considered the Guidelines, the parties' respective arguments, and the 18 U.S.C. § 3553(a) sentencing factors. Although Wanna never requested a downward departure or variance, the district court discussed the possibility of departing downward under U.S.S.G. § 5H1.4 or varying downward under 18 U.S.C. § 3553(a)(2)(D), but declined to do so. The district court sentenced Wanna to 33 months imprisonment—the bottom of the advisory Guidelines range. Wanna appeals, arguing the district court erred in (1) denying Wanna's motions for judgment of acquittal, and (2) failing to vary downward or depart downward in imposing Wanna's sentence.

## II.   DISCUSSION

### A.   Wanna's Conviction

Wanna urges this court to "reverse the denial of Wanna's motions for judgment of acquittal and vacate her conviction" because she believes the evidence was insufficient to convict her. See Fed. R. Crim. P. 29(a). In Wanna's view, the trial evidence demonstrated (1) Wanna "was authorized to receive additional compensation for additional work, including attendance at additional meetings, so long as such payments were authorized by the district"; and (2) the district members' approval of the monthly treasurer reports "negated the requirement that the government prove beyond a reasonable doubt that Wanna willfully or knowingly committed the crime of Misapplication of Funds from an Indian Tribal Organization."

"We review *de novo* the denial of a motion for judgment of acquittal." United States v. Chase, 451 F.3d 474, 479 (8th Cir. 2006). "We view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Cook, 603 F.3d 434, 437 (8th Cir. 2010). "We may reverse only if no reasonable jury could have found the defendant guilty

beyond a reasonable doubt." United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003).

The trial evidence in this case amply supports the jury's guilty verdict. A person violates 18 U.S.C. § 1163 if she "embezzles, steals, knowingly converts to [her] use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization." At trial, the government adduced evidence that Wanna—despite knowing the district members sought to restrict the board's compensation—cashed or deposited 436 checks payable to her totaling $111,465 in district funds in just two years.

In addition to writing checks to herself, Wanna authorized 679 checks on district accounts to her fellow board members, often meeting only to exchange checks and then go gambling. In the two-year period covered by the indictment, the board members received over $430,000 in district funds, far in excess of what the district members actually authorized. The jury even heard testimony from Wanna's sister Jackie that Wanna concocted the scheme to obtain large sums of money from the district by issuing checks to each board member for unnecessary and sham meetings after learning Strutz had gotten away with fraudulently taking over $10,000 from the district.

To be sure, Wanna proclaimed her innocence and denied Jackie's testimony, but the jury was not obligated to accept Wanna's version of events. "The jury has the responsibility of resolving conflicts or contradictions in testimony, and we resolve any credibility issues in favor of the verdict." United States v. Ali, 616 F.3d 745, 755 (8th Cir. 2010). Because a reasonable jury could find Wanna acted knowingly and willfully in violating 18 U.S.C. § 1163, the district court did not err in denying Wanna's motions for judgment of acquittal.

### B.  Wanna's Sentence

Wanna asserts "the district court clearly erred or abused its discretion in failing to grant her a downward departure for extraordinary physical impairments pursuant to U.S.S.G. [§] 5H1.4 and failing to adequately consider her need for medical care and grant her a [United States v. Booker, 543 U.S. 220 (2005)] variance under 18 U.S.C. § 3553(a)(2)(D) based upon her substantial health issues."  Maintaining "Wanna made no mention of a request for a downward departure or variance at sentencing, and no motion was filed pre-sentencing," the government notes we generally review the sentence imposed "under a deferential abuse-of-discretion standard," Gall v. United States, 552 U.S. 38, 41 (2007), but review for plain error when the defendant fails to preserve the alleged sentencing error in the district court, see United States v. MacInnis, 607 F.3d 539, 542 (8th Cir. 2010).

We need not resolve any dispute with respect to the proper standard of review because Wanna's challenge to her sentence fails "under either standard."  United States v. Jirak, 728 F.3d 806, 815 (8th Cir. 2013); cf. United States v. Acison, 417 F.3d 944, 946 (8th Cir. 2005) (questioning whether a criminal defendant must "raise the issue himself in order to preserve it" where the sentencing court "indicated it was fully aware of the issue" and "obviously had an opportunity to consider and decide it").

First, "[w]e have repeatedly held that when a district court is aware of its discretion to depart downward [under the Guidelines] and elects not to exercise this discretion, then that decision is unreviewable."  United States v. Watson, 480 F.3d 1175, 1177 (8th Cir. 2007).  "The district court in this case clearly recognized that it had the authority to depart and declined to exercise that authority because it did not believe," Unites States v. Frokjer, 415 F.3d 865, 875 (8th Cir. 2005), Wanna's condition met the requirements of U.S.S.G. § 5H1.4 because Wanna's "health care problems" could "be easily managed by the Bureau of Prisons."

Second, we conclude the district court did not abuse its discretion or otherwise err in declining to vary downward based on Wanna's myriad health problems, sentencing Wanna to 33 months imprisonment—the bottom of the advisory Guidelines range. See Gall, 552 U.S. at 41. We afford Wanna's within-Guidelines range sentence "a presumption of reasonableness" that Wanna fails to overcome. Id. at 51. "But even without that presumption, the record shows that the court carefully explained the reasons for its sentence and its refusal to vary downward, and we see no indication that the court improperly weighed the sentencing factors." United States v. Von Crutcher, 529 F. App'x 802, 803 (8th Cir. 2013) (unpublished per curiam); accord United States v. Gonzalez-Renteria, 373 F. App'x 655, 656 (8th Cir. 2010) (unpublished per curiam) (concluding the sentencing "court did not abuse its discretion in denying the motion for a downward variance, as the record indicate[d] that the court was well aware of [the defendant's] relevant medical history and considered all of the 18 U.S.C. § 3553(a) sentencing factors").

## III.  CONCLUSION

We affirm the district court's judgments on Wanna's conviction and sentence.

_____