# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-3678

_____

United States of America

*Plaintiff - Appellee*

v.

Ricardo Omar Hernandez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 16, 2014
Filed: August 13, 2014
[Unpublished]

_____

Before RILEY, Chief Judge, BEAM and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Ricardo Hernandez was convicted of conspiring to possess and distribute methamphetamine in violation of 21 U.S.C. § 846.  On appeal, Hernandez challenges

the sufficiency of the evidence, the district court's[1] decision to allow three handwritten notes into evidence, and his sentence. We affirm.

## I. BACKGROUND

After receiving information that suggested drug-dealing activity, Lincoln Police Department ("LPD") investigator Anthony Gratz and other officers conducted surveillance of an apartment building located at 1749 Euclid Street in Lincoln, Nebraska. Hernandez and his girlfriend, Jessica Zabel, lived in one of the two apartments in the building. On February 13, 2013, at approximately 10:45 p.m., Gratz observed a van pull up in front of the apartment building, and the driver, later identified as Christopher Martinez, got out of the van, walked up to the building and spoke with Hernandez. A passenger remained in the van. Martinez and Hernandez walked inside the building. Martinez emerged about 30 minutes later, carrying a small package. Officers observed Martinez drive down the street where he then delivered the package to another house. When Martinez drove off, the officers followed his vehicle. The officers stopped the van for traffic violations, determined that Martinez had a suspended license, and took him into custody. Subsequently, the officers conducted a search of the van and discovered a methamphetamine pipe and a straw.

On February 23, 2013, Gratz again conducted surveillance on Hernandez's home. On that date, he saw a female, later identified as Angie Shera, go into the house, while a passenger waited in the car. Shera exited the house, about fifteen minutes later, and drove away. The officers followed Shera to another apartment building's parking lot and stopped Shera's vehicle. Shera admitted to the officers that she was driving on a suspended license and when the officers asked her to step out

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

of her vehicle, she attempted to conceal an item in her pocket. The officers seized a plastic baggie containing a white substance, later determined to contain methamphetamine. The officers also recovered a number of cell phones and marijuana pipes.

Based on this evidence, Gratz obtained and executed a search warrant for Hernandez's apartment. When the officers entered the apartment, Zabel was in the living room and Hernandez was in the bedroom. The two elected to leave the apartment while it was searched. Officers photographed and recovered methamphetamine, cash, a small amount of marijuana, and "owe sheets."[2]

Hernandez was indicted with conspiring to possess and distribute 500 grams or more of a substance containing a detectable amount of methamphetamine and five grams or more of methamphetamine in violation of 21 U.S.C. §§ 841 and 846. The indictment also included a forfeiture provision for $12,914.00 in cash. The case went to trial and a jury found Hernandez guilty. Prior to sentencing, Hernandez filed a motion for a variance from the Guidelines sentence based upon a terminal illness. The district court denied the motion and sentenced Hernandez to 324 months' imprisonment, the low end of the Guidelines range, which was 324 to 405 months. Hernandez appeals.

---

[2]According to Gratz, based on his experience as a narcotics officer, an "owe sheet" is a list of numbers next to names indicating the amount of money owed or quantities of narcotics.

## II.  DISCUSSION

### A.  Sufficiency of the Evidence

Hernandez challenges the sufficiency of the evidence supporting his conviction.  On such a challenge, "the standard of review is very strict, and the jury's verdict is not to be lightly overturned."  United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004).  We view the evidence in the light most favorable to the government, resolve any evidentiary conflicts in the government's favor, accept all reasonable inferences drawn from the evidence that support the jury's verdict, and we will uphold that verdict as long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt.  Id.  On a conspiracy charge, the jury is required to find that (1) an agreement existed among two or more people to accomplish an illegal purpose, (2) the defendant knew of the conspiracy, and (3) the defendant knowingly joined and participated in the conspiracy.  Id.  Proof of a defendant's involvement in a conspiracy may be demonstrated by direct or circumstantial evidence.  United States v. Cannon, 475 F.3d 1013, 1020 (8th Cir. 2007).

Hernandez's arguments do not support his appeal.  Hernandez first asserts that many of the witnesses who testified at trial were cooperating witnesses and/or drug addicts or convicted felons.  Accordingly, Hernandez claims that they were not credible.  However, "[t]he jury is the final arbiter of the witnesses' credibility, and we will not disturb that assessment."  Hayes, 391 F.3d at 961.  Challenging witness credibility, here, does not provide relief for Hernandez.

Hernandez next contends that the evidence that emerged from the search does not indicate Hernandez's involvement in a drug conspiracy, but this argument is unavailing. Officer Gratz, who searched Hernandez's apartment, testified at trial that he recovered methamphetamine, cash, a small amount of marijuana and "owe sheets." Also, at trial, multiple witnesses testified that they purchased methamphetamine from

Hernandez. For example, Shera specifically testified that she purchased a gram of methamphetamine on one occasion and 1/16 ounce of methamphetamine on another occasion from Hernandez. She also generally stated that she purchased methamphetamine from him "every couple weeks." Another witness, Ana Carlisle, testified that she dated Hernandez and that he lived with her from the beginning of 2012 until April or May of that year. According to Carlisle, while they lived together, other people came to their residence to get methamphetamine from Hernandez. She further testified that she obtained methamphetamine from Hernandez to sell to other people. Given this evidence, and after a thorough review of the testimony in the record, we conclude that the jury was positioned to properly find, beyond a reasonable doubt, that Hernandez was involved in a conspiracy to sell methamphetamine.

## B. Three Handwritten Notes Admitted Into Evidence

During trial, the court received into evidence three notes alleged to have been handwritten by Hernandez. Hernandez asserts that these notes were not properly authenticated, and accordingly, were improperly admitted into the trial record. We review the district court's admission of evidence for an abuse of discretion. United States v. Glassgow, 682 F.3d 1107, 1110 (8th Cir. 2012).

To authenticate an item of evidence, Federal Rule of Evidence 901(a) provides that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." "Proponents of evidence may authenticate an item through several methods including, '[t]he appearance, contents, substance, internal patterns, or other distinctive characteristic of the item, taken together with all the circumstances.'" United States v. Young, 753 F.3d 757, 773 (8th Cir. 2014) (alteration in original) (quoting Fed. R. Evid. 901(b)(4)). The contents of a writing may be considered in the authentication of the writing, and the proponent of the evidence may also use circumstantial evidence to satisfy the authentication standard.

Id. "Notes . . . may be admitted despite the author's anonymity, especially when the writings demonstrate the author's intimate familiarity with the events in question." Id. Once this threshold is satisfied, the jury determines any further questions as to the evidence's authenticity. Id.; Kaplan v. Mayo Clinic, 653 F.3d 720, 726 (8th Cir. 2011).

To authenticate the notes at trial, the government offered testimony from Lonnie Obst, who was involved in drug distribution with Hernandez. Obst testified that he received the notes while he was in custody at the Diagnostic and Evaluation Center in Lincoln, Nebraska. Prior to receiving the notes, Obst testified that he saw Hernandez, who was also in custody at the same facility, through a window. At that time, Hernandez mouthed to Obst, "You're telling on me," to which Obst replied, "Can you show me my name on paper?" The next day, another inmate delivered a piece of paper containing multiple names and information relating to Hernandez's case, which included Obst's name. Then, Obst received the three handwritten notes at issue on appeal, which contain statements such as "what I need u [sic] to do is don't go to testafy [sic] saying all them lies about the guns + dope" and "keep ur [sic] lips sealed." Obst testified that he knew that the notes came from Hernandez because the language in the notes reflected to Obst how Hernandez speaks and because the notes referenced Obst's potential testimony against Hernandez. No one else knew Obst was going to testify against Hernandez. Given this testimony, the notes were properly authenticated, and the district court did not abuse its discretion in accepting the three notes into evidence.

## C.    Hernandez's Sentence

Finally, Hernandez also challenges the district court's decision to deny his motion for a downward variance based on his terminal illness. We review the imposed sentence under a deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41 (2007). The sentencing range was 324 to 405 months in

prison. The district court sentenced Hernandez to the low-end of the Guidelines–324 months' imprisonment. We afford a within-Guidelines range sentence a "presumption of reasonableness." United States v. Wanna, 744 F.3d 584, 589 (8th Cir. 2014). "But even without that presumption, the record shows that the court carefully explained the reasons for its sentence and its refusal to vary downward, and we see no indication that the court improperly weighed the sentencing factors." Id. (quotation omitted). There was no abuse of discretion here.

## III. CONCLUSION

For these reasons, we affirm the district court.

_____